IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARK HARRELL, et al.           :
                               :
                               :
     v.                        :     Civil No. CCB-11-3046
                               :
                               :
JOSEPH M. DONATO, et al.       :

### MEMORANDUM

Plaintiffs Mark Harrell and Roslyn Wiggins bring this action against several members of the Baltimore City Police Department: Sergeant Joseph M. Donato and Officers Valentine Nagovich, Jr., Iris T. Martin, and William Rivera (together, "the defendants"). Harrell and Wiggins allege discrimination on the basis of race in violation of 42 U.S.C. § 1983. Now pending before the court is the defendants' motion for summary judgment. The parties have briefed the issues, and oral argument was held on December 4, 2013. For the reasons stated below, the motion for summary judgment will be granted.

### BACKGROUND

Police reports written by Nagovich and Donato reveal unacceptable behavior by members of the Baltimore City Police Department, including a warrantless home search. According to the report written by Nagovich, on September 13, 2010, officers were patrolling in the 1900 block of McCulloh Street. (Nagovich's Report, ECF No. 81-1, at 2.) The officers "were in the area conducting a [controlled dangerous substance] investigation and also for the spike in recent shootings in [that area]." (*Id.*) They claimed that Mark Harrell and another individual, Gregory Harrell, were "loitering in the area impeding the free flow of vehicular and pedestrian traffic." (*Id.*) The officers advised both men to stop blocking traffic and to leave the area. (*Id.*) When

1

they returned to the area about forty-five minutes later, however, both men were still at the 1900 block. (*Id.*) At that point, Harrell became angry towards the officers, and began cursing at them. (*Id.*) The officers arrested Harrell, and brought him to Baltimore Central Booking and Intake Facility ("CBIF") to be "processed and charged." (*Id.*)

Donato's report includes a number of events conspicuously missing from Nagovich's report. According to Donato, after warning Harrell not to loiter on McCulloh Street, he returned to the area and saw Harrell speaking with an unknown individual at the doorway of 410 Robert Street. (Donato's Report, ECF No. 81-1, at 3–4.) Donato reports that Harrell "appeared to throw a dark object into the door of 410 Robert St[reet]." (*Id.* at 4.) Harrell then shut the door and walked to the corner of Robert and McCulloh Streets. (*Id.*) After arresting Harrell for loitering, Donato began "us[ing] force to enter the front door of 410 Robert St[reet]," despite the fact that he had no warrant to do so. (*Id.*) His report admits that he damaged the door frame. (*Id.*)

Harrell and Wiggins' version of events adds troubling details regarding police behavior on September 13, 2010. On that day, Harrell was knocking on the front door of his 410 Robert Street home when Donato exited his police vehicle and, using an expletive, asked him what he was doing. (Harrell's Answers to Interrogs., ECF No. 81-2, at 3.) Harrell told Donato that he had forgotten his house key, and he was knocking on the door to see if Wiggins was home to let him in. (*Id.*) As Donato continued to question Harrell, Martin and either Nagovich or Rivera approached the men. (*Id.*) Donato ordered the other two officers to remain with Harrell. (*Id.*) Then, although he did not have a warrant, Donato began pushing on the front door of 410 Robert Street. (*Id.*) Donato proceeded to place Harrell in handcuffs. (*Id.*) When Harrell asked what his charges were, Donato stated, "I'll think of something." (*Id.*) At some point after Harrell was placed in handcuffs, Wiggins returned home. (Wiggins' Answers to Interrogs., ECF No. 81-3, at

2

3.) Wiggins asked officers at the scene what the charges were against Harrell, but they would not answer her. (*Id.*) Harrell was eventually brought to CBIF and charged with disorderly conduct and loitering in a public place, but the charges were disposed of by *nolle prosequi*. (Harrell's Answers to Interrogs. at 3.) When she returned home later on September 13, Wiggins noticed that the front door to 410 Robert Street was "completely destroyed" so that she could not lock the door to the house. (Wiggins' Answers to Interrogs. at 3.)

Harrell also alleges a series of events on September 16, 2010, which Donato, Martin, and Rivera deny. (*Compare* Harrell's Answers to Interrogs. at 3–4, *with* Donato's Answers to Interrogs., ECF No. 81-4, at 4; Martin's Answer to Pl.'s Req. for Admis. of Facts, ECF No. 87-2, at 1; Rivera's Answers to Pl.'s First Set of Interrogs., ECF No. 87-7, at 2.)[1] According to Harrell, on September 16, 2010, he was on McCulloh Street speaking with his nephew, Tony Moore. (Harrell's Answers to Interrogs. at 3.) Harrell was approached by either Nagovich or Rivera, who searched and handcuffed him. (*Id.*) He was then approached by Donato, at which time he asked what his charges were. (*Id.*) Donato responded, "Let's take it up a notch, how about conspiracy?" (*Id.* at 3–4.) Harrell was forced into a police cruiser with Martin and either Nagovich or Rivera; Moore also was in the car. (*Id.*) Either Nagovich or Rivera showed him and Moore what appeared to be heroin pills, asking "Oh, what do we got here?" (*Id.* at 4.) Eventually, Harrell was brought to CBIF. (*Id.*) He was held there for seventeen hours and released without charges. (*Id.*)[2]

---

[1] According to Donato, he only saw Harrell in passing after the September 13, 2010, arrest. (Donato's Answers to Interrogs. at 4.) He recalled telling Harrell to stay off the street corner. (*Id.*) Martin denies detaining Harrell on September 16. (Martin's Answer to Pl.'s Req. for Admis. of Facts at 1.) Rivera likewise denies having any interaction with Harrell on September 16. (Rivera's Answers to Pl.'s First Set of Interrogs. at 2.)

[2] Despite Harrell's claims, the Department of Public Safety and Correctional Services ("DPSCS") has no record of a September 16, 2010, arrest. (*See* Aug. 26, 2013, Letter from

Since the events alleged in this case, Donato and Rivera have been removed from active duty as a result of disciplinary actions, although they remain employed by the Baltimore City Police Department.  (*See* Donato's Amended Answer to Pl.'s Req. for Admis. of Facts, ECF No. 98-1, at 1; Rivera's Amended Answers to Pl.'s Req. for Admis. of Facts, ECF No. 98-1, at 2–3; *see also* Defs.' Status Update, ECF No. 99, at 2.)

## STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) (emphasis added).  Whether a fact is material depends upon the substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  *Id.*  "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  The court must view the evidence in the light most favorable to the nonmovant and draw all justifiable inferences in his favor.  *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citation omitted); *see also Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore*, 721 F.3d 264, 283 (4th Cir. 2013) (citation omitted).  At the same time, the court must not yield its obligation "to prevent factually unsupported claims and defenses from proceeding to trial."  *Bouchat*, 346 F.3d at 526 (citation and internal quotation marks omitted).

---

DPSCS.)  Harrell offers only a property receipt as evidence of his confinement on September 16. (*See* Receipt, ECF No. 87-4, at 1–2.)

## ANALYSIS

**A.**

As a preliminary matter, the court must address Harrell and Wiggins' claim that the record in this case is not complete because they (1) continue to seek Internal Investigation Division ("IID") records for the defendants and (2) require additional discovery from Nagovich, who did not provide timely responses to their requests.  First, Harrell and Wiggins obtained all the IID records they are entitled to receive.  Indeed, plaintiffs' counsel had the sustained complaints for Donato and Rivera at the December 4, 2013, motions hearing, and they were discussed at length in the opposition to the defendants' motion for summary judgment.[3]  As for Harrell and Wiggins' second argument, Nagovich was granted a stay during the pendency of his bankruptcy proceedings.  He provided timely discovery responses on January 16, 2014, after the bankruptcy proceedings were completed and the stay was lifted.  Since then, plaintiffs' counsel has not filed any objections or a motion to compel, and has not requested to depose Nagovich.  The court, therefore, is satisfied that the record in this case is complete, and will proceed to rule on the defendants' motion for summary judgment.

**B.**

The Equal Protection Clause of the Fourteenth Amendment guarantees that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  To allege a violation of the Equal Protection Clause based on racial discrimination, the plaintiff must first make a two-part showing: (1) she was treated differently from similarly situated individuals; and (2) the differential treatment was due to "intentional or purposeful discrimination." *See Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001).  As

---

[3] Although the IID records show violations against African-American community members, it does not appear that they include findings of racial discrimination.

to the second part of the two-part showing, there will rarely be direct evidence of racial animus. Accordingly, plaintiffs may rely on circumstantial evidence to show racially discriminatory intent. For example, "[w]here a plaintiff seeks to prove discriminatory intent, the probative value of statements revealing the racial attitudes of the [defendant] is great." *Mullen v. Princess Anne Volunteer Fire Co.*, *Inc.*, 853 F.2d 1130, 1133 (4th Cir. 1988). Similarly, "evidence of prior discriminatory acts is often crucial in proving that the defendants' current practices, viewed in a longer time frame, reveal discriminatory motivation." *Wyatt v. Sec. Inn Food & Beverage, Inc.*, 819 F.2d 69, 71 (4th Cir. 1987).

Section 1983 allows a civil cause of action for deprivation of equal protection rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To evaluate equal protection claims under § 1983, courts often apply a "Title VII proof scheme." *See Middlebrooks v. Univ. of Md. at College Park*, 980 F. Supp. 824, 833 (D. Md. 1997), *aff'd*, 166 F.3d 1209 (4th Cir. 1999); *see also Gairola v. Commw. of Va. Dep't of General Servs.*, 753 F.2d 1281, 1285 (4th Cir. 1985). Pursuant to this proof scheme, the burden is on the plaintiff to establish a prima facie case of racial discrimination by a preponderance of the evidence. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the plaintiff establishes a prima facie case, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Morrison*, 239 F.3d at 654.

Applying the above standards, to establish a prima facie case of racial discrimination, Harrell and Wiggins must show that: (1) they were treated differently from similarly situated individuals; and (2) the differential treatment reflects racially discriminatory intent. The plaintiffs challenge three events as impermissibly motivated by race, in violation of equal protection: (1) Harrell's September 13, 2010, arrest and subsequent imprisonment; (2) the

defendants' forced entry into Wiggins' home, in the absence of any warrant; and (3) Harrell's false imprisonment on September 16, 2010.[4]  They do not, however, proffer any explanation or evidence as to how Harrell and Wiggins were treated differently from similarly situated individuals of another race.  *Cf. Townes v. Jarvis*, 577 F.3d 543, 550–51 (4th Cir. 2009) (considering the claim that a "three-strikes parole eligibility statute" violated equal protection, when an African-American man fell within the three-strikes law but a "white, 'upper middle-class housewife'" did not); *Veney v. Wyche*, 293 F.3d 726, 731 (4th Cir. 2002) (concluding that a homosexual male inmate alleged differential treatment from similarly situated individuals, when he claimed that "both heterosexual males and homosexual females at [the prison] are housed in double-occupancy cells, while his requests to move from his single-occupancy cell have been consistently denied").[5]  Thus, while the court in no way condones the defendants' alleged conduct in this case, Harrell and Wiggins cannot establish a prima facie case of racial discrimination.

---

[4] The plaintiffs allege that these events reflect equal protection violations.  They do not, as was discussed at oral argument, claim violations of the Fourth Amendment.

[5] They also do not produce sufficient evidence that Martin, Rivera, and Nagovich acted personally in the deprivation of their constitutional rights.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (explaining that, to establish personal liability in a § 1983 action, the plaintiff must show that the official caused the deprivation of his federal rights); *see also Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (same).  After a full opportunity for discovery, they still cannot identify whether Rivera or Nagovich engaged in certain impermissible conduct.  Likewise, they allege only that Martin was present on September 13, not that she carried out the arrest or entered Harrell and Wiggins' home.

## CONCLUSION

For the reasons stated above, the defendants' motion for summary judgment must be granted. A separate order follows.

<u>April 29, 2014</u>　　　　　　　　　　　　　　　　　　<u>　　　　　/s/　　　　　</u>
Date　　　　　　　　　　　　　　　　　　　　　　　　Catherine C. Blake
　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge